STATE OF MONTANA ex rel. ANTHONY F. KEAST, County Attorney in and for the County of Missoula, Relator, v. DISTRICT COURT of the FOURTH JUDICIAL DISTRICT of the State of Montana in and for the COUNTY OF MISSOULA, and HONORABLE C. E. COMER, District Judge, Respondents.

No. 10105.

Submitted November 6, 1959. Decided December 2, 1959.

348 Pac. (2d) 135.

See **C. J. S.** Infants, § 96.

Anthony F. Keast, Missoula, argued orally, for relator.

Harold L. Garnaas, Missoula, argued orally for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original proceeding for a writ of mandamus or

other appropriate writ directed to the judge of the District Court of the Fourth Judicial District in and for the County of Missoula. An alternative writ of mandamus was issued by this court directed to the district judge, since retired, or his successor, in which the district judge was ordered to permit the filing of certain informations charging the crime of robbery against three named defendants, Gary Skoverski, Ken Pinto and Tom Miller, or show cause why he had not done so.

The county attorney of Missoula County had filed complaints in the justice court on September 30, 1959, charging the three previously named defendants with the crime of robbery, a felony. The defendants had answered to their true names and entered pleas of "guilty" to the charge of robbery. The justice court set bonds in the amount of $2,500 each and bound them over to the District Court.

Following this, the county attorney filed a petition for leave to file information direct in the District Court of Missoula County. The information was filed, again charging a crime of robbery, and the District Court thereupon appointed an attorney to represent the defendants. It was made to appear that the defendants were under the age of eighteen years, Gary Skoverski being seventeen years and the defendants Pinto and Miller being over sixteen years of age when the crime was committed. The District Court was advised that the case was being filed under R.C.M. 1947, section 10-602, and that the crime and the defendants were persons included in the definitions of that section.

Subsequently the defendants, through their court appointed counsel, filed a motion to quash the information. The District Court heard the arguments of the county attorney, the relator herein, and the defense counsel, and granted the motion to quash. The motion to quash was based on the grounds that the court did not have jurisdiction to try the defendants except in the juvenile court.

Immediately thereafter, the relator county attorney moved the

court for leave to file an additional information charging the defendants and each of them with the crime of robbery, a felony, as prescribed and outlined by R.C.M. 1947, section 10-602. This motion was denied.

The relator, the county attorney, then filed his petition before this court for a writ of mandamus or other appropriate writ to compel the District Court to permit the filing of the information.

From the information filed, and from the statements of the county attorney appearing from the record made before the District Court, it appears that the crime of robbery against the three youthful defendants came about as a result of the robbery of a lady residing in Missoula County, in which robbery the lady was tied and gagged and an amount of $39 taken from her.

On the day set by this court for return to its alternative writ, the respondent District Court filed an answer and return before this court, in which it is argued (1) that the writ of mandamus or other appropriate original proceeding writ is not proper because an appeal would lie from the order quashing the information and that therefore the original proceeding was not appropriate because an adequate remedy at law existed; and (2), the respondent court, sitting as a District Court, had no jurisdiction over a child between the ages of sixteen and eighteen who commits the crime of robbery unless he has in his possession a deadly weapon, and is carrying such deadly weapon with intent to assault allegedly as required by R.C.M. 1947, section 10-602. The answer and return also made it appear there existed no deadly weapon in the offense charged.

Therefore the questions posed for us are, first the appropriateness of the remedy and, second, a determination of the meaning of section 10-602.

This court did accept original jurisdiction in the matter, it having been made to appear that unless such proceedings were had by this court, the District Court would release the juvenile

offenders. Whether or not the release of the juvenile offenders was an absolute release or a release to the proper juvenile authorities was not made to appear. But, from the record, it is apparent that the three defendants are youths from the State of California and not residents of this state, and in the event that an appeal was taken it might be necessary to institute extradition proceedings or in some other manner return the defendants before the courts of Montana. It also appears that a jury term is in the process of being conducted in Missoula County, and that a speedy trial could be had if the matter, as to whether or not the court had criminal jurisdiction over youths between the ages of sixteen and eighteen in the crime of robbery as charged, could be determined expeditiously.

We believe that a sufficient showing has been made that original proceedings before this court are proper in this case, and we will not make an extended discussion of the reasons therefor. We do note however that the respondent court in its answer and return suggests that the discretion of the District Court must be moved before an information is filed. It is apparent from the record herein that the county attorney did satisfy the District Court that the particular offense charged in the information was one of the felony charges enumerated in R.C.M. 1947, section 10-602 (see State ex rel. Dahl v. District Court, 134 Mont. 395, 333 Pac. (2d) 495, and that he had sufficient evidence to substantiate the filing.

It appearing then that the District Court refused to allow the filing of a new information, and granted an order quashing the old information, that it did so *on the sole grounds of the interpretation of section 10-602,* it being the court's belief that it did not have jurisdiction to try the youthful offenders in the juvenile court for the crime of robbery committed without the use of a deadly weapon.

R.C.M. 1947, section 10-602, so far as is material to this action, provides as follows:

"(2) The words 'delinquent child' include: * * *

"(b) A child who has violated any law of the state, provided, however, a child over the age of sixteen (16) years who commits or attempts to commit murder, manslaughter, assault in the first degree, robbery, first or second degree burglary while having in his possession a deadly weapon, *and carrying a deadly weapon or weapons with intent to assault,* shall not be proceeded against as a juvenile delinquent but shall be prosecuted in the criminal courts in accordance with the provisions of the criminal laws of this state governing the offenses above listed." Emphasis supplied.

It is the respondent court's contention that the words, "and carrying a deadly weapon or weapons with intent to assault," is a phrase limiting and modifying the previously set out crimes of murder, manslaughter, assault in the first degree, robbery, and first or second degree burglary while having in his possession a deadly weapon.

The respondent court sets out the question as follows: "However, in this subdivision, and following the last enumerated crime of first or second degree burglary while having in his possesison a deadly weapon, we find the following phrase, 'and carrying a deadly weapon or weapons with intent to assault.' *If that phrase does not pertain to, add to, or modify the previously enumerated offenses, then did the Legislature intend by this language to create a new and hitherto unheard of crime?"* Emphasis supplied.

The relator, county attorney in this case, seems to concede that the Legislature might be creating a new and "hitherto unheard of crime" as expressed by the respondent or that such phrase is ambiguous. However, such a suggestion and such a contention misses the mark completely. The crime of "carrying a deadly weapon or weapons with intent to assault" is expressly enumerated in R.C.M. 1947, section 94-909, as a crime as follows:

*"Carrying deadly weapon with intent to assault—penalty.* Every person having upon him a deadly weapon with intent to

assault another is guilty of a felony, and, upon conviction thereof, shall be punished by imprisonment in the state prison for a term of not less than one year nor more than five years.''

It is immediately seen that the Legislature, in listing the crimes, listed certain statutory felonies and only modified that of first and second degree burglary to require the possession of deadly weapons. Otherwise the crimes are all statutory felonies and the listing of them indicates that the Legislature was thinking in terms of vicious personal crimes and crimes directed against the person as distinguished from crimes against property. It would seem that the Legislature had in mind that juveniles between the ages of sixteen and eighteen would be held for the juvenile court in all crimes not specifically enumerated; that as to those enumerated the sixteen to eighteen year age class would stand trial in the criminal courts.

We have examined the legislative history of section 10-602 which was passed as chapter 276, Laws of 1947, amending chapter 227, Laws of 1943, and find nothing in that history as reported in the House and Senate Journals or as shown in the mimeographed and printed bills with amendments thereto to indicate any other intent than the plain expression of the language used.

It appears from the House and Senate Journals of the Session of 1947, that chapter 276 was first introduced as Senate Bill No. 123. As first introduced, section 2 of the bill containing definitions included all felonies. This was amended to specifically name the statutory offenses, including the offense of carrying a deadly weapon with intent to assault. At this first amendment, the crime of robbery was not included. The bill, from the history, appears to have had a rough passage, having been killed at one stage. It was later recalled, amended again and sent to the House where again the section on definitions was amended and where the crime of robbery was speci-

fically included for the first time. The bill was then sent back to the Senate where the House amendments were concurred in.

In addition to the fact that the specific statutory crime of ▉ carrying a deadly weapon with intent to assault was enumerated, the fact that the specific crime of robbery was later added, makes it appear to be unreasonable to follow the contentions of the respondent court herein that the phrase ''and carrying a deadly weapon or weapons with intent to assault'' could be held to modify robbery or any of the other specifically listed crimes.

Thus, as to the crime of robbery, no possession of a weapon is necessary to be charged. The foregoing interpretation of the language used in section 10-602 makes each of the crimes and phrases used meaningful, and we believe the proper interpretation.

Because of what has been said heretofore it is apparent that the District Court should hear the matter as a criminal court, and that its order quashing the information filed was in error; its refusal to permit the filing of a new information was error and should be set aside; and the matter returned to the District Court for further proceedings not inconsistent with what has been herein said. The alternative writ heretofore issued is made permanent.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE ANGSTMAN concur.

MR. JUSTICE BOTTOMLY and MR. JUSTICE ADAIR dissenting:

On or about the 30th day of September 1959, in the County of Missoula, State of Montana, three teenagers, Gary Skoverski, Ken Pinto and Tom Miller allegedly participated in a robbery. It is asserted that on or about September 30, 1959, these three boys, using force, took from the possession of one Mrs. Fred Erlandson approximately $39. These facts were set

out in a complaint filed on September 30, 1959, in the Justice Court of Hellgate Township, Missoula, Montana. The three boys appeared before the justice of the peace in answer to the complaint and without counsel representing them pled "guilty" to the charge. The justice of the peace thereupon set bond and bound the defendants over to the District Court, in and for the County of Missoula, for trial.

After this action was taken it is not clear just what procedure was followed.

If the justice of the peace obeyed the mandate of section 94-6124, R.C.M. 1947, he would have returned, without delay, to the Clerk of the District Court where the defendants were required to appear, "the complaint, testimony, and warrant, if any, and all undertakings of bail, or for the appearance of witnesses, taken by him." Then, and in that event the county attorney could have filed his information as a matter of right based upon the record made in the justice court. It is only where there has been no examination and commitment by a magistrate that the county attorney is required to obtain leave of court. R.C.M. 1947, section 94-4910.

Here the county attorney did not follow the statutory procedure but on the other hand on or about the 14th day of October he filed a paper designated an "Application for Leave to File an Information" wherein he requested the District Court to exercise its discretion and (1) grant leave to file or (2) require an examination before a magistrate, justice of the peace or district judge prior to the filing of the information. R.C.M. 1947, section 94-4911. See State ex rel. Harrison v. District Court, 135 Mont. 365, 340 Pac. (2d) 544.

At the time the application for leave to file was submitted the District Court was required to do some act. The District Court did act by granting leave to file the information. Accordingly an information charging the crime of "robbery" was filed against these three defendants.

Counsel was then appointed by the court for the defendants

and counsel promptly filed a motion to quash the information. This motion was argued before the District Court by the county attorney, for the State and by defendant's attorney, Mr. Garnaas. The teenagers being under the age of 18 years, it was contended by defendants' counsel that these defendants could not be prosecuted in the criminal District Court, because the information did not charge that the defendants had or carried a deadly weapon, as provided by sections 10-602, subd. (1) and 10-602, subd. (2) (b), R.C.M. 1947, and that therefore because of the age of these defendants, one being 17 years old, the other being 16 years of age, the defendants were children under said section and the juvenile court and only the juvenile court had jurisdiction over these defendants. The District Court after argument and briefs granted the motion to quash the information. The county attorney then moved orally that the court grant leave to file an additional information wherein the defendants would be charged with the same crime of robbery, a felony. This charge was, for all intents and purposes, the identical charge contained in the information which the court had just quashed. There was only an oral application here made by the county attorney.

Of course this verbal request for leave to file an identical information which the court had already ruled upon did not impose a burden upon the District Court to do anything. This is a different factual situation than was presented in the case of State ex rel. Harrison v. District Court, supra. While as set out in the Harrison case, when the application for leave to file an information is presented to the court, the court must either grant or deny or require an examination, at the court's discretion. Here the court had already acted. If subsequently, the information is dismissed because it is held legally insufficient, whether the dismissal be error or not, the court cannot be compelled to go through the entire procedure again merely by being orally requested to allow the filing of another identical information. A writ of mandate will not lie under such cir-

cumstances. Such application for leave to file must be in writing and just as complete and formal as though the matter had never been before the court. See State ex rel. Juhl v. District Court, 107 Mont. 309, 84 Pac. (2d) 979, 120 A.L.R. 353, and cases cited therein.

The county attorney here, minutes before, had had his information dismissed and the question presented was what was he going to do about it?

In the Juhl case, supra, this court held that when the former informations had been dismissed, before the District Court would be justified in granting leave to file a new information, the application therefor by the county attorney should be just as complete and formal as though the matter had never been before the court. Since the motion to quash performs the same function as a demurrer the State could have and should have appealed. See section 94-8104.

But the county attorney did not follow the statutory procedure nor the rule laid down in the Juhl case, supra, but he came running to this court seeking, as he put it, a ''writ of mandamus or other appropriate writ,'' to have this court compel the District Court to strike its order quashing the information and to allow the county attorney to proceed again against these defendants upon the subsequent proposed information he had requested leave to file. What other appropriate writ was sought we never learned, as all arguments in this matter were based upon whether or not a writ of mandate should issue. To support his contention, that the writ was proper and should issue, it was necessary that the county attorney show that the State is entitled to have this court compel the District Court to perform an act, which act the law specifically enjoins as a duty upon the District Court. In addition, if the denial of a clear legal duty is shown, then the writ may issue if there is not a plain, speedy and adequate remedy provided by law. See R.C.M. 1947, sections 93-9102 and 9103.

What was the clear legal duty imposed upon the District

Court in this matter? What clear legal right has the District Court denied the relator? Did the District Court have jurisdiction to rule on the motion to quash? Was the District Court, under the law, required to allow the refiling of an identical information which it had already dismissed after notice and hearing? Is the District Court compelled to rule only one way on disputed legal questions? Can this court *compel* the District Court under such facts and law to rule a certain way upon a legal question by a writ of mandate? The District Court, by law, is given a wide range of discretion in this matter.

These are the questions raised on this disguised appeal. The relator never pointed out to this court that the District Court had denied him any clear legal duty owing him. He never could make such a showing from the facts of this case and the record. The District Court had jurisdiction and the duty to rule upon the motion to quash. Whether its ruling was right or wrong it had the power to rule. The District Court by law could not be compelled, and never should be compelled by mandamus, to allow a refiling of the same information after it has already been ruled upon and dismissed. The law as given us by the Legislature sustains the action of the District Court.

If the State felt aggrieved it had a remedy by appeal which in this criminal case would be plain, speedy and adequate. In State ex rel. Harrison v. District Court, supra, it is plain that the court may have to do something when application is first filed for leave to file direct, *but that case clearly holds that the District Court could not be compelled to allow the filing of the information.*

This court cannot, under the guise of a writ of mandate, compel the District Court to refrain from exercising its discretion under the statute, R.C.M. 1947, section 94-4910, and order it to perform an act not required by law. The law says, "written motion" not an *oral* one.

The question was presented here as to whether or not the

crimes enumerated in section 10-602, subd. (2), (b), R.C.M. 1947, required a charge in addition to the enumerated crime of also having in possession a deadly weapon. To answer the question presented by the motion to quash, it required that section 10-602, subd. (2) (b), be construed and interpreted. That different legal conclusions, as to what the statute means, can be drawn is obvious from the briefs presented in this matter.

What is more obvious, however, is that the statute does not set out a clear legal duty which the District Court is or should be compelled to do or perform. The District Court had the jurisdiction and discretion to construe the statute, right or wrong, and this court does not have any power given it to issue a writ of mandamus to compel the District Court to rule one way or the other—only to require the District Court to rule. This power is given the Supreme Court only on appeals. The county attorney had the right to appeal here and we would confine his rights to what the Constitution and statutes of the State of Montana give him. This court should not legislate.

We would like to point out something here which we believe should be seriously considered and that is this. This increasingly popular procedure to review cases, which properly should be brought up on appeal to this court, by means of applications for special writs should be eliminated. In trying to rule upon the various petitions this court has presently entered into a never-never-lnad in regard to writs. This case is illustrative of the extent to which the court has granted writs which in fact have no statutory foundation at all. We would return to our constitutional and statutory limits of power and in the future insist that the statutes concerning special writs be strictly construed and applied to the end that these matters may be heard in their proper time and in their correct perspective, as contemplated by our Constitution and statutes. We refuse to think and act with the majority of the court in usurping the prerogative and constitutional powers of the Legislature.

In this connection, we would like. to point out that in this case our feeling is that these youthful defendants were denied due process of law because of the manner in which this case was reviewed by this court. These defendants are in a strange State and, with a court-appointed attorney, they had moved to quash the information and had been successful. If that ruling had been appealed from, they would have been given ample time in this court to prepare a brief and argue at length the legal reasons supporting their construction of the applicable statute, and the legislative intent and reason for the special wording of section 10-602, subd. (2) (b), R.C.M. 1947. Instead of an appeal, however, they were presented a writ of mandamus issued ex parte by this court in an original proceeding here commenced, wherein the District Court was to be compelled to adopt the theory of the county attorney which theory, defendants' attorney, Mr. Garnaas, had prevailed over in the first instance when he had been able to meet the county attorney's argument in open court and present these defendants' side of the argument.

The writ of mandate so issued out of this court against the District Court and judge, however, presented a new and different problem to the defendants' attorney. Reading the applicable statutes on mandamus, sections 93-9101 and 93-9104 and applying these statutes to the facts of this case, it becomes obvious that the writ would not lie. Thus the district judge is in the position, on the return, of contesting the application for the writ and we believe properly so, but the case presently is being decided upon the legal construction of the statute and not upon whether the writ lies or not. While counsel for the respondent District Court and judge was permitted to briefly argue the merits yet in our opinion the time so allotted was wholly insufficient and thus denied respondents their day in court which right would not have been denied the youthful defendants had this case been brought before this court on appeal.

In their decision on this case, the majority have declared that section 10-602, subd. (2) (b), should have a certain construction. We do not agree with their ruling nor that the issues decided were even before this court in the original proceeding here commenced. As we read the section, the clause ''while having in his possession a deadly weapon'' applies to and becomes a part of each and all of the crimes set out immediately before the clause, the crimes being, murder, manslaughter, assault in the first degree, robbery, and first or second degree burglary. We do not agree it applies only to first or second degree burglary and we think a mere reading of the statute will convince any lawyer or layman. Any legislator in the 1943 and 1947 sessions when these sections were discussed and enacted well knows that the foregoing is the intent with which the Legislature enacted the same.

The purpose of the juvenile act as set out in section 10-601, R.C.M. 1947, supports this construction. Juveniles were to be prosecuted in the criminal court only in certain instances for committing certain crimes but *only* if, as the clause sets out, the juvenile had in his possession at the time of committing the enumerated crime a deadly weapon. Such possession would have to be charged and proven as a material element under this statute before conviction could be had in the criminal District Court. As we read the section, the legislative intent is clear and unequivocal, that a juvenile of the ages of these defendants, *could not* be prosecuted in the criminal court for any of the enumerated crimes unless it was alleged and proven that in addition to the committing of any of these enumerated crimes he was, at the time of the act, also armed with a deadly weapon; this was not alleged in the proposed information. An intent to use a deadly weapon in the commission of any of the statutory crimes must be shown. It should be remembered that chapter 6, R.C.M. 1947, Vol. 1, Part 2, is a special act, and must be so construed.

Any other construction defeats the purpose of the juvenile

382

act. The construction of the statutes in this instance, by the judge of the District Court was correct. If the statute needs to be changed, it is for the Legislature, not for the courts to so legislate.

We would order the alternative writ of mandate dismissed, dismiss this cause with prejudice and direct the District Court to transfer all files in this action to the juvenile court and proceed therein as provided by R.C.M. 1947, section 10-610.